2005 OK CIV APP 90

**HOMEOWNERS FOR FAIR ZONING, Mona Miller, E.B. Miller, Carol Land, Alfred Benjamin, Sunny Benjamin, James Scheel, Judith Scheel, Wilfred Sanditen, E.L. Thomas, Roger Thomas, Emmett Tate, Carol Tate and Vernon Mudd, Plaintiffs/Appellants,**

v.

**CITY OF TULSA and the F & M Bank and Trust Company, Defendants/Appellees.**

**No. 101,404.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Oct. 18, 2005.

*ritt v. Merritt*, 2003 OK 68, ¶ 17, 73 P.3d 878, 883.

Louis W. Bullock, Patricia W. Bullock, Robert M. Blakemore, Bullock & Bullock, John S. Denney, John S. Denney, P.C., Tulsa, OK, for Plaintiffs/Appellants.

Barry G. Reynolds, Titus Hillis & Reynolds, Roy D. Johnsen, Janine H. VanValkenburgh, Epperson & Johnsen, Joel L. Wohlgemuth, David R. Ross, Norman Wohlgemuth Chandler & Dowdell, Tulsa, OK, for Defendant/Appellee The F & M Bank and Trust Company.

Michael C. Romig, City Attorney's Office, Tulsa, OK, for Defendant/Appellee City of Tulsa.

Opinion by RONALD J. STUBBLEFIELD, Acting Presiding Judge.

¶ 1 This is an appeal by Plaintiffs from the Trial Court's grant of summary judgment in favor of Defendants in a case involving a municipal zoning change. The dispositive issue is whether an ordinance requiring approval of protested zoning changes by three-fourths of the City Council is superseded by Tulsa's amended Charter, which recognizes zoning authority and provides for adoption of new ordinances by simple majority. We conclude that the Charter supersedes the ordinance and affirm the Trial Court's grant of summary judgment.

### FACTS AND PROCEDURAL BACKGROUND

¶ 2 F & M desired to build a bank and office facility on the southwest corner of the intersection of 71st Street South and Harvard Avenue in Tulsa. Plaintiffs, nearby landowners, protested the zoning change that F & M's plans required. The City of Tulsa has an ordinance that requires a super-majority of three-fourths of the City Council for approval of a proposed zoning change which is protested by a sufficient number of surrounding property owners. City, however, disallowed some of the protests to F & M's proposed change and concluded there were not enough valid protests to trigger the super-majority requirement. The Council approved the ordinance, making the requested zoning change by a 5–to–4 vote.

¶ 3 Plaintiffs filed this district court lawsuit against Defendants to obtain judicial review of the Council's action. Defendants both filed motions for summary judgment asserting that the ordinance requiring the super-majority was invalid because it conflicted with City's Charter, which requires only a simple majority to pass ordinances. Following an exchange of briefs and a hearing, the

Trial Court granted summary judgment.[1] After the Trial Court denied Plaintiffs' motion to reconsider, they filed this appeal.

## STANDARD OF REVIEW

¶ 4 As always, we review this summary judgment *de novo* to determine whether one party is entitled to judgment as a matter of law because there are no disputes of material fact. *Hill v. Blevins,* 2005 OK 11, ¶ 3, 109 P.3d 332, 334. The parties agree that there are no disputed facts material to the single dispositive legal issue.

## DISCUSSION

■ ¶ 5 In the Trial Court, Plaintiffs sought review of two Council decisions: (1) the disallowance of some protests filed by nearby landowners and the 6–to–3 Council vote determining there were too few valid protests to trigger the super-majority requirement; and (2) the 5–to–4 Council vote to adopt the ordinance making the change requested by F & M. Defendants argued in support of both Council decisions, but also argued that regardless of whether the protests were valid, the ordinance requiring a super-majority was invalid because it conflicted with City's Charter. The Trial Court agreed and granted summary judgment on the sole basis that the ordinance was superseded by the Charter. The parties agree that this is the sole issue presented on appeal.

¶ 6 Title 42, section 1703 of Tulsa's ordinances addresses zoning changes. Tulsa, Okla., Rev. Ordinances tit. 42, § 1703. Zoning changes are effected by passage of an ordinance, and section 1703(E) requires a three-fourths majority of the Council to approve an ordinance making a zoning change if the change is protested by a sufficient percentage of nearby landowners. This super-majority requirement conforms with a state statute on the same subject. 11 O.S.

2001 § 43–105(B)(2). Section 43–105(B)(2), predecessor of 11 O.S.1971 § 405, was the source of City's zoning authority when its zoning ordinances were first enacted in 1970, because City's Charter did not address zoning at that time.

¶ 7 City, however, amended its Charter in 1989. The amended Charter created the City Council and, among other things, empowers it to adopt zoning ordinances, Tulsa, Okla., Amended Charter art. I, § 3(N), and provides for the passage of ordinances by a majority of the Council, article II, section 6.2. This results in an apparent conflict between article II, section 6.2 of the Charter, requiring a majority, and section 1703(E) of the ordinances, requiring a super-majority.

¶ 8 A city's charter supersedes not only a preexisting charter but also any inconsistent ordinances. Okla. Const. art. 18, § 3(a). In addition, when it conflicts with a statute in effect when the charter was adopted, the charter supersedes the statute as to purely municipal matters. 11 O.S.2001 § 13–109; *U.S. Elevator Corp. v. City of Tulsa,* 1980 OK 69, ¶ 7, 610 P.2d 791, 793.

¶ 9 Plaintiffs, however, contend that City's amended Charter and section 1703 do not conflict because the Charter's use of "majority" does not necessarily mean a simple majority of half plus one. Our analysis of the Charter's text does not find support for this argument. The Charter drafters specifically anticipated the necessity of super-majorities in certain instances, expressly requiring approval by two-thirds of the Council to override a mayoral veto (art. II, § 9); fine a councilor (art. II, § 4); waive the requirement that the subject of an ordinance appear on the council agenda for two meetings (art. II, § 8); and remove a member of the Civil Service Commission (art. X, § 2.1). Because article II, section 6.2 requires only a "majority," without specifying any particular type of majority, we conclude that it contemplates a simple majority. *See Johnson v.*

---

1. This Court feels compelled to commend the parties and the Trial Court for the manner in which this dispute has been presented and resolved. The summary judgment briefs are clear and cogent and provide invaluable assistance to the lower court and this Court. The transcripts of the hearings on the motions for summary judgment and the pronouncement of judgment demonstrate that all participants were well prepared and acted with the utmost civility and competency. This appellate record should serve as a model for trial level and appellate summary process.

*City of Woodward,* 2001 OK 85, ¶ 6, 38 P.3d 218, 222 (courts presume a law-making body expressed its intent in a law and intended what it expressed).

¶ 10 Nevertheless, Plaintiffs argue that this sets only a minimum requirement and need not conflict with an ordinance requiring approval by more than a simple majority. Plaintiffs have provided no authority for this argument and we do not find it persuasive. Indeed, the Oklahoma Supreme Court has held that, even if an ordinance requires a super-majority, a simple majority is sufficient unless the super-majority is required by the Charter or a statute that is the source of the authority exercised in the ordinance. *Development Indus., Inc. v. City of Norman,* 1966 OK 59, ¶ 15, 412 P.2d 953, 956.

█ ¶ 11 Plaintiffs further argue that the ordinance and Charter are contemporaneous—City's ordinances were re-adopted in the amended Charter—and contend that the two must be construed together to avoid a conflict.[2] We disagree. While there is a "strong presumption against implied repeals" when construing two statutes passed in the same legislative session at nearly the same time, we find no similar presumption regarding city charters and ordinances. *Tubbs v. State ex rel. Teachers Ret. Sys.,* 2002 OK 79, n. 10, 57 P.3d 571, 577. The general provision in article XII, section 22 of the Charter, that "all ordinances, resolutions, rules, and regulations . . . shall remain in full force and effect until repealed or amended as provided in this amended Charter or by ordinance, or resolution" cannot be read as re-adopting a specific ordinance. Indeed, based on the Charter's specific provision that ordinances could be adopted by a simple majority of the entire council, we find it a stronger argument that the super-majority ordinance, section 1703(E), was "repealed or amended as provided in this amended Charter."

<hr/>

2. Defendants do not accept this premise because the ordinance was re-adopted and recodified in 1990 and 1997.

3. Recognized matters of municipal or purely local concern are: (1) the effective date of an ordinance, even when that is determinative of another town's property rights, *Town of Luther v.*

¶ 12 Nonetheless, Plaintiffs argue that the Charter cannot prevail because the state statute also requires a super-majority for zoning changes. 11 O.S.2001 § 43–105(B)(2). If the Charter did not empower the Council to enact zoning ordinances, the Council's power would arise from the statute and the process for challenging a zoning change would have to comply with it. *Application of Reynolds,* 1958 OK CR 73, 328 P.2d 441; *Development Indus.,* 1966 OK 59 at ¶ 11, 412 P.2d at 956. However, as we previously observed, a city charter supersedes any preexisting charter, any inconsistent ordinances, and any conflicting statute *addressing municipal matters.* Okla. Const. art. 18, § 3(a); 11 O.S.2001 § 13–109; *Town of Luther v. State ex rel. Harrod,* 1967 OK 59, ¶ 0, 425 P.2d 986, 987 (Syllabus 2); *U.S. Elevator,* 1980 OK 69 at ¶ 7, 610 P.2d at 793. City's Charter, with its requirement of a simple majority to pass new ordinances, will prevail over the ordinance and statute that require a super-majority unless the issue has more than a municipal impact.[3]

¶ 13 Plaintiffs concede that zoning is a municipal matter, but argue that the procedural protections for contesting a zoning change are of statewide concern because they affect the public policies of (1) avoiding the unreasoned and arbitrary exercise of power and (2) protecting the continuity of property rights. Plaintiffs have the burden of proving that this is not merely a municipal matter. *Moore Funeral Homes, Inc. v. City of Tulsa,* 1976 OK 96, ¶ 7, 552 P.2d 702, 705. In determining whether they have satisfied this burden, we must strike a balance as to the interests affected. *U.S. Elevator,* 1980 OK 69 at ¶ 10, 610 P.2d at 793.

¶ 14 We conclude that the broader interests Plaintiffs identify are not sufficient to overcome the presumption of the Charter's supremacy. That an issue "affect[s] the people generally" is not sufficient, because

*State ex rel. Harrod,* 1967 OK 59, ¶ 0, 425 P.2d 986, 987(Syllabus 3); (2) funding street improvements, even when the street is also a state and federal highway, *Moore Funeral Homes, Inc. v. City of Tulsa,* 1976 OK 96, 552 P.2d 702; and (3) competitive bidding, *U.S. Elevator Corp. v. City of Tulsa,* 1980 OK 69, 610 P.2d 791.

"[n]early every function of any local government may be said to affect 'the people generally' in this mobile society. Practically any action of a city will have an impact upon persons not permanent residents of that municipality." *Id.* at ¶ 8, 610 P.2d at 793. Other than the fact that they would probably have been on the winning side of this zoning dispute, Plaintiffs have failed to identify how statewide interests would be more protected by the requirement of a super-majority than they are by the requirement of a simple majority. Plaintiffs may not be satisfied by the outcome, but they conceded in the hearing on summary judgment that they received due process and that the necessary protections were provided by the process set forth in City's Charter. *Reynolds,* 1958 OK CR 73 at ¶ 5, 328 P.2d at 444.

■ ¶ 15 The Trial Court here was persuaded by the Oklahoma Supreme Court's analysis in *Development Industries,* upholding a City Council's decision by a simple majority to amend a zoning ordinance despite the existence of an ordinance requiring a three-fourths majority. Although the case dealt with an instance where the council's authority arose from a state statute rather than the city's charter, the Court made an observation we find compelling and determinative here:

> "The charter is an authority superior to an ordinance in a charter city, and the council cannot, by ordinance, divest itself of power conferred upon it by the charter." The same reasoning applies in this case. The statute authorizing the adoption of zoning ordinances is silent as to authorizing a requirement of a three-fourths vote before approval over the objection of the planning commission of a zoning ordinance.

*Development Indus.,* 1966 OK 59 at ¶ 12, 412 P.2d at 956 (quoting *Bauman v. State ex rel. Underwood,* 122 Ohio St. 269, 171 N.E. 336, 336 (1930)). The *Development Industries*

Court concluded that the council could not limit the authority given to it by either a statute or the charter, and that an ordinance seeking to do so had to fail.[4]

¶ 16 Certainly, there are valid reasons for requiring a super-majority. A super-majority requirement can "avoid the sometimes unreasoned and arbitrary exercise of power by a bare majority who may be animated by some whim or caprice" and "protect the property owner in his continuity of rights or restrictions which may have existed at the time he acquired the property or thereafter attached before re-zoning [was] sought." *Reynolds,* 1958 OK CR 73 at ¶ 6, 328 P.2d at 444. Nevertheless, the existence of a good argument for requiring a super-majority can not compel us to create such a requirement, where none exists, at the cost of engaging in judicial legislation and overturning long-held legal precedent.[5]

## CONCLUSION

¶ 17 The City of Tulsa's zoning authority arises from its Charter, which provides for the adoption of a new ordinance by a simple majority of the Council. An ordinance seeking to limit that authority by requiring a super-majority to make zoning changes is invalid. Thus, the Trial Court correctly determined, as a matter of law, that City's ordinance section 1703(E) is superseded by City's amended Charter, and that passage of the disputed zoning-change ordinance by a simple majority vote was valid.

¶ 18 AFFIRMED.

REIF, J. (sitting by designation), and WISEMAN, J. (sitting by designation), concur.

---

4. In contrast, where the authorizing statute required a super-majority, a city council could not effectively change a zoning ordinance by a simple majority. *Reynolds,* 1958 OK CR 73, 328 P.2d 441.

5. We must also reject Plaintiffs' argument that City's acquiescence in the validity and interpretation of the ordinance for 30 years weighs in favor of upholding it as valid. We find no authority to support this proposition, as this kind of equitable argument cannot generally be invoked against a governmental agency. *Strong v. State ex rel. Okla. Police Pension & Ret. Bd.,* 2005 OK 45, ¶ 9, 115 P.3d 889, 893–94.