Dear Ms. Woody:
This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. May a municipality require a real estate broker licensed by the Oklahoma Real Estate Commission to obtain a license from the municipality in order to do business as a real estate broker in that municipality?
 2. If the answer to number 1 is yes, may a municipality charge the state-licensed real estate broker a fee for the municipal license?
 3. May a municipality require a state-licensed real estate broker to attend particular meetings or to live in or have an office either in the county in which the municipality is located, or in an adjoining county in order to conduct business as a real estate broker in the municipality?
 I. POWERS OF MUNICIPALITIES
Your questions relate to the power of a municipality to regulate the activities of a real estate broker licensed by the Oklahoma Real Estate Commission when that broker conducts business within the municipality. The law governing municipalities is set forth in the Oklahoma Municipal Code ("Municipal Code"), 11 O.S. 2001 Supp. 2010, §§ 1-101 — 55-103. A "municipality" is defined as "any incorporated city or town[.]" 11 O.S. 2001, § 1-102[11-1-102](5). *Page 2 
Municipalities are divided into two categories, non-charter and charter municipalities. A non-charter municipality, also known as a statutory municipality, has no inherent power or authority. "[I]t possesses and can exercise only those powers expressly granted, or incidental to powers expressly granted, by the state." City ofHartshorne v. Marathon Oil Co., 593 P.2d 97, 99 (Okla. 1979);Shipp v. Se. Okla. Indus. Auth.,498 P.2d 1395, 1398 (Okla. 1972). The powers of non-charter municipalities are those that are set by the Municipal Code.[1]See 11 O.S. 2001 Supp. 2010, §§ 1-101 — 55-103;Morehead v. Dyer, 518 P.2d 1105, 1107 (Okla. 1973). The Municipal Code provides that a municipality may "enact ordinances, rules and regulations not inconsistent with the Constitution and laws of Oklahoma for any purpose mentioned in Title 11 of the Oklahoma Statutes or for carrying out their municipal functions." 11 O.S. 2001, § 14-101[11-14-101].
A "charter municipality" is defined as "any municipality which has adopted a charter in accordance with the provisions of the Constitution and laws of Oklahoma and at the time of adoption of the charter had a population of two thousand (2,000) or more."Id. § 1-102(1); see id. § 13-101; OKLA. CONST. art. XVIII, § 3(a). A charter municipality has full power of local self-government, including the power to enact and to enforce ordinances to protect the public peace, order, health and welfare of its inhabitants. Moore v. City of Tulsa,561 P.2d 961, 963 (Okla. 1977).
If the exercise of municipal power conflicts with State law, the conflict is resolved by determining whether the exercise of municipal power pertains to purely municipal affairs or those of statewide concern. Oliver v. City of Tulsa,654 P.2d 607, 609 (Okla. 1982). Charter provisions may conflict with the laws of the State in matters purely of local concern, and the charter provisions are controlling over the State law. City ofTulsa v. Pub. Employees Relations Bd.,845 P.2d 872, 875 (Okla. 1990). With respect to matters of statewide concern, the State Constitution and State laws control over conflicting city charter provisions. Reed v. City of Tulsa,569 P.2d 451, 453 (Okla. 1977).
 II. A MUNICIPALITY MAY REQUIRE A REAL ESTATE BROKER LICENSED BY THE OKLAHOMA REAL ESTATE COMMISSION TO OBTAIN A LICENSE FROM THE MUNICIPALITY AND MAY LEVY AND COLLECT A TAX FOR SUCH LICENSE.
You first ask whether a municipality may require a real estate broker licensed by the Oklahoma Real Estate Commission to obtain a license from the municipality in order to do business in that municipality. You next ask whether a municipality may charge a fee for such license. Both of these questions are resolved by the plain language of the Municipal Code. When the Legislature's intent is clear from the plain language of a statute, statutory construction is unnecessary. Fuller v. Odom,741 P.2d 449, 452 (Okla. 1987). *Page 3 
Title 11 O.S.Supp. 2010, § 22-106[11-22-106] provides, in pertinent part:
 A. A municipal governing body may levy and collect a license tax on auctioneers, contractors, druggists, hawkers, peddlers, bankers, brokers, pawnbrokers, merchants of all kinds, grocers, confectioners, restaurants, butchers, taverns, public boarding houses, billiard tables, bowling alleys, and other amusement devices, drays, hacks, carriages, omnibuses, carts, wagons and other vehicles used in the municipality for pay, hay scales, lumber dealers, furniture dealers, saddle or harness dealers, stationers, jewelers, livery stable keepers, real estate agents, express companies or agencies, telegraph companies or agencies, shows, theaters, all kinds of exhibitions for pay, also photographers, photographers' agents, agents of all kinds and solicitors. The taxes so levied and collected shall be applied for the use and benefit of the municipality as the governing body may direct.
 . . . .
 C. The governing body may establish penalties for any failure to observe the license provisions or to pay the tax provided for by ordinance.
Id. (emphasis added).
Pursuant to Section 22-106 of the Municipal Code, the Legislature has empowered a municipality, whether charter or non-charter, to levy and collect a license tax on certain enumerated occupations, including real estate brokers. The license issued by the municipality constitutes evidence of payment of the tax. A municipality is authorized by State statute to require a real estate broker licensed by the Oklahoma Real Estate Commission to obtain a license from the municipality and may levy and collect a tax for such license.
 III. THE EXTENT TO WHICH A MUNICIPALITY MAY EXERCISE ANY AUTHORITY OVER A STATE-LICENSED REAL ESTATE BROKER BEYOND THE POWER TO LEVY AND TO COLLECT A LICENSE TAX DEPENDS UPON THE NATURE OF THE ACTIVITIES BEING PERFORMED BY THE REAL ESTATE BROKER WITHIN THE MUNICIPALITY.
You last ask whether a municipality may require a state-licensed real estate broker to attend particular meetings or to live in or have an office either in the county in which the municipality is located or in an adjoining county in order to conduct business in the municipality. Your question arises because of ordinances enacted in some municipalities requiring out-of-county owners of rental property located in those municipalities to register the rental property with the municipality as part of a program intended to address the problem of deteriorated and blighted *Page 4 
rental properties. These municipal ordinances, which for ease of reference are referred to in this Opinion as rental property registration programs, require the out-of-county owner to designate an individual ("designated individual") with a physical address within the county where the municipality is located who is responsible for the operation and maintenance of the rental property and who can accept service of legal process on behalf of the owner.[2]
There is no requirement within these rental property registration programs that the designated individual be a real estate broker. However, language in the ordinances directs that the designated individual will be responsible for the "operation" and "maintenance" of the rental property. Depending upon the particular municipality's definition of the word "operation," the designated individual might fall within the definition of a "real estate broker" under Oklahoma law and might be required to be licensed by the Oklahoma Real Estate Commission.[3] From this follows your inquiry regarding the power of a municipality to regulate the activities of a state-licensed real estate broker when that real estate broker is conducting business in the municipality.
A. State Law Governing Real Estate Brokers
The law governing real estate brokers is set forth in the Oklahoma Real Estate License Code ("Real Estate Code"), 59 O.S. 2001 Supp. 2010, §§ 858-101 — 858-829. The Real Estate Code establishes the Oklahoma Real Estate Commission ("Commission") and provides in pertinent part:
 The Oklahoma Real Estate Commission shall have the following powers and duties:
 . . . .
 5. To issue licenses to and regulate the activities of real estate brokers, provisional sales associates, sales associates, branch offices, nonresidents, associations, corporations, and partnerships[.]
59 O.S.Supp. 2010, § 858-208[59-858-208](5) (emphasis added).
The Real Estate Code defines the term "real estatebroker" to include:
 [A]ny person, partnership, association or corporation, foreign or domestic, who for a fee, commission or other valuable consideration, or who with the intention or expectation of receiving or collecting a fee, commission or other valuable *Page 5 consideration, lists, sells or offers to sell, buys or offers to buy, exchanges, rents or leases any real estate, or who negotiates or attempts to negotiate any such activity, or solicits listings of places for rent or lease, or solicits for prospective tenants, purchasers or sellers, or who advertises or holds himself out as engaged in such activities[.]
Id. § 858-102(2) (emphasis added). Pursuant to the Real Estate Code, an individual who for a fee, commission or other valuable consideration, rents or leases real properties or who negotiates or attempts to negotiate the rental or lease of real properties or who solicits listings of rental properties or solicits prospective tenants for rental properties, constitutes a real estate broker under Oklahoma law and must be licensed by the Real Estate Commission.
The Real Estate Code specifically provides that:
 The Commission shall be the sole governmental entity, state, county or municipal, which shall have the authority to regulate and issue real estate licenses in the State of Oklahoma.
Id. § 858-201(A) (emphasis added).
When the Legislature's intent is clear from the plain language of a statute, statutory construction is unnecessary. Fuller,741 P.2d at 452. The plain language used by the Legislature indicates a clear intent for the Commission to occupy the field of regulating real estate licenses. See Stone v. Linden Real Estate,Inc., 210 P.3d 866, 868 (Okla. Civ. App. 2009) (recognizing that the Legislature may occupy a field of law); Fancy'sEntm't L.L.C. v. City of Enid,171 P.3d 928, 932 (Okla. Civ. App. 2007) (recognizing that the State may occupy a particular field of law). Under the Oklahoma statutes the Commission is the exclusive governmental body over and above any other state, county, or municipal governmental entity with the power to substantively regulate real estate licenses. The regulation of real estate brokers constitutes a matter of statewide interest as evidenced by the legislative mandate that the Commission constitutes the sole governmental entity with the authority to substantively regulate real estate licenses and the activities of real estate brokers.
With this legislative intent in mind, to determine the extent to which a municipality may exercise any authority over a state-licensed real estate broker beyond the power to levy and collect a license tax requires further examination of the authority of a municipality to enact the type of rental property ordinance in question and the appropriate interaction of that authority with State laws governing real estate brokers.
B. Municipalities May Enact Ordinances to Promote the Health,Safety, Morals, or General Welfare of the Community.
As set forth in this Opinion, the Municipal Code provides that a municipality, may "enact ordinances, rules and regulations not inconsistent with the Constitution and laws of Oklahoma *Page 6 
for any purpose mentioned in Title 11 of the Oklahoma Statutes or for carrying out their municipal functions." 11 O.S. 2001, § 14-101[11-14-101]. The Municipal Code further provides that a municipality may "enact and enforce such ordinances, rules and regulations as it deems necessary for the protection of the public health, not inconsistent with state law[.]"Id. § 22-120.
Title 11 O.S. 2001, § 43-101[11-43-101], of the Municipal Code provides further that "[f]or the purpose of promoting health, safety, morals, or the general welfare of the community," a municipality may "regulate and restrict the . . . use of buildings, structures and land for trade, industry, residence or other purposes." The Oklahoma Supreme Court has recognized that "from expressed grants of power there may arise implied powers to do the things necessary and proper to the complete enjoyment of the powers expressly granted."State ex. rel. Woods v. Cole, 63 P.2d 730, 733 (Okla. 1936).
The rental property registration programs, which triggers your third question, fall within a municipality's authority under Oklahoma law to enact ordinances necessary for the protection of the public health, safety, morals and general welfare of the municipality. These rental property registration programs are designed to address the problem of blighted and deteriorated rental properties by facilitating the ability of the municipality to locate and communicate with an individual within the county who is designated to be responsible for the operation and maintenance of the property on behalf of an out-of-county owner.
While a charter municipality may enact charter provisions that conflict with state laws in matters purely of local concern, with respect to matters of statewide concern, state laws control over conflicting city charter provisions. Reed,569 P.2d at 453. The Legislature has indicated its clear intent that the authority to substantively regulate real estate licenses and real estate brokers rests solely with the Real Estate Commission, over and above any other state, county, or municipal governmental entity. The substantive regulation of real estate brokers constitutes a matter of statewide concern; thus, a charter city cannot enact ordinances that conflict with State laws governing real estate brokers.
The pivotal question you ask is whether, with respect to the rental property registration program enacted in a given municipality, the municipality may require a state-licensed real estate broker acting as a designated individual to attend meetings and to live in or have an office either in the county in which the municipality is located or in an adjoining county. The answer to your question depends upon whether the requirements of the given rental property registration program implicate the Real Estate Code. Whether the Real Estate Code is implicated depends upon the given municipality's definition of the word "operation," the nature of the activities being performed by the real estate broker as the designated individual, and whether the real estate broker is performing the activities for a fee, commission or other valuable consideration. *Page 7 
C. When a Municipality Attempts to Regulate the Leasing ofRental Property or Soliciting Prospective Tenants for the RentalProperty for a Fee
If the municipality's definition of "operation" means the rental or leasing of the rental property or the solicitation of prospective tenants for the rental property, the Real Estate Code is implicated when the designated individual is performing these activities for a fee, commission or other valuable consideration. That designated individual falls within the definition of a "real estate broker" under Oklahoma law and must be licensed by the Oklahoma Real Estate Commission. 59 O.S.Supp. 2010, § 858-102[59-858-102](2).
In this scenario, the real estate broker acting as the designated individual is performing activities that only a licensed real estate broker can perform under Oklahoma law, and neither a non-charter city nor a charter city can require the real estate broker to attend meetings or to live in or have an office in a particular geographic location. Any requirement that the real estate broker comply with these two conditions constitutes a conflict with State law governing real estate brokers. With respect to a charter city, any attempt to impose such requirements upon a real estate broker constitutes a conflict with State laws governing a matter of statewide concern,i.e., the substantive regulation of real estate brokers, by imposing requirements upon a real estate broker over and above what is required by the Real Estate Commission, the sole governmental entity with the authority to substantively regulate real estate brokers.
D. Leasing of Rental Property or Soliciting ProspectiveTenants for the Rental Property for No Fee
If the real estate broker acting as the designated individual is leasing the rental property or soliciting prospective tenants for the rental property for no fee, commission, or other valuable consideration, that broker is not performing an activity that requires a real estate broker's license under Oklahoma law. In this scenario, a municipality, charter or non-charter, may require a real estate broker acting as the designated individual for no fee to attend meetings and to live in or have an office in a particular geographic location. The Real Estate Code is not implicated; thus, the municipality's imposition of the additional requirements does not conflict with any State laws.
E. Collecting Rental Payments for the Rental Property orPerforming Physical Upkeep of the Rental Property
If the given municipality's definition of the word "operation" means the physical upkeep of the rental property or simply the collection of rental payments for the rental property, the Real Estate Code is not implicated, even when the real estate broker acting as the designated individual is performing these activities for a fee. Oklahoma's definition of a "real estate broker" does not require an individual who collects rental payments or who performs physical upkeep on a rental property to be licensed by the Real Estate Commission. See 59 O.S.Supp. 2010, § 858-102[59-858-102](2). *Page 8 
In this scenario, a charter or non-charter municipality may require the real estate broker acting as the designated individual to attend meetings and to live in or have an office in a particular geographic location. The municipality's imposition of the additional requirements does not conflict with any State laws.
F. Leasing of Rental Property or Soliciting ProspectiveTenants for the Rental Property for a Fee as Well as CollectingRental Payments or Performing Physical Upkeep on the RentalProperty
Another instance may occur if the given municipality's definition of the word "operation" means the physical upkeep of the property or the collection of rents and the real estate broker acting as the designated individual is both leasing the rental property or soliciting prospective tenants for a fee and performing physical upkeep on the rental property or collecting rents. In this scenario, the broker is performing some activities which require a real estate broker's license under Oklahoma law and some activities for which such a license is not required. A municipality, charter or non-charter, may require a real estate broker acting as the designated individual to attend meetings and to live in or have an office in a particular geographic location.
It is, therefore, the official Opinion of the Attorney Generalthat:
 1. The substantive regulation of real estate brokers is a matter of statewide interest. Pursuant to the Oklahoma Real Estate Code, 59 O.S.Supp. 2010, § 858-201[59-858-201](A), the Legislature has established the Oklahoma Real Estate Commission as the sole governmental body with the power to substantively regulate real estate brokers.
 2. Under the Oklahoma Municipal Code the Legislature has granted municipalities the power to enact ordinances, rules and regulations not inconsistent with the Constitution and State laws for any purpose mentioned in Title 11 of the Oklahoma Statutes or for carrying out their municipal functions. See 11 O.S. 2001, § 14-101[11-14-101]. Pursuant to 11 O.S.Supp. 2010, § 22-106[11-22-106], the Legislature has carved out for municipalities, both charter and non-charter, the authority to levy and to collect a tax from real estate brokers and to issue municipal licenses as evidence of payment of the tax.
 3. Within the Oklahoma Municipal Code, the Legislature has granted municipalities the authority to enact ordinances deemed necessary for the protection of the public health, safety, morals or the general welfare of the community. See 11 O.S. 2001, §§ 22-120[11-22-120], 43-101. Some municipalities have enacted ordinances establishing rental property registration programs to address the problem of blighted and deteriorated rental properties owned by absentee or out-of-county owners. Depending upon the given municipality's definition of the *Page 9 term "operation" with respect to the rental property, the designated individual referenced within these ordinances may fall within the definition of a "real estate broker" under Oklahoma law and may be required to be licensed by the Oklahoma Real Estate Commission.
 4. If a municipality's definition of "operation" means the rental or leasing of the rental property or the solicitation of prospective tenants for the rental property, and a real estate broker acting as the designated individual is performing these activities for a fee, commission or other valuable consideration, a municipality, charter or non-charter, cannot require the real estate broker to attend meetings associated with the rental property registration program or to live in or have an office in the county where the municipality is located or in an adjoining county. The real estate broker acting as the designated individual is performing activities that only a licensed real estate broker can perform under Oklahoma law. 59 O.S.Supp. 2010, § 858-102[59-858-102](2).
 5. If the real estate broker acting as the designated individual is leasing the rental property or soliciting prospective tenants for the rental property for no fee, commission or other valuable consideration, the Real Estate Code is not implicated. See 59 O.S.Supp. 2010, § 858-102[59-858-102](2). A municipality, charter or non-charter, may require the real estate broker acting as the designated individual for no fee to attend meetings or to live in or have an office in a particular geographic location.
 6. If the given municipality's definition of the word "operation" means the physical upkeep of the rental property or simply the collection of rental payments for the rental property, the Real Estate Code is not implicated, even when the real estate broker acting as the designated individual is performing these activities for a fee. 59 O.S.Supp. 2010, § 858-102[59-858-102](2). A charter or non-charter municipality may require the real estate broker acting as the designated individual to attend meetings and to live in or have an office in a particular geographic location.
 7. If the given municipality's definition of the word "operation" means the physical upkeep of the rental property or the collection of rental payments, even though a real estate broker acting as the designated individual is performing activities for which a real estate broker's license is required under Oklahoma law along with activities for which no such license is required, a charter or non-charter *Page 10 municipality may require the real estate broker to attend meetings and to live in or have an office in a particular geographic location.
E. SCOTT PRUITT ATTORNEY GENERAL OF OKLAHOMA
ALECIA A. GEORGE ASSISTANT ATTORNEY GENERAL
[1] Oklahoma recognizes four different statutory forms of municipal government: (1) statutory aldermanic (11 O.S. 2001, § 9-101[11-9-101]); (2) statutory council-manager (id. § 10-101); (3) statutory strong-mayor-council (id. § 11-101); and (4) statutory town board of trustees (id. § 12-101).
[2] This Opinion does not address the municipal code of any specific municipality.
[3] This Opinion assumes that the phrase "maintenance of the rental property" refers only to the physical care and upkeep of the rental property, including the structure and the land/landscape. *Page 1